In re Petition of Charles W. BURSON, Attorney General of Tennessee, and the State Board of Equalization for Determination of Whether Representation of Taxpayers by Registered Appraisers and Other Non–Attorneys (Corporate Employees and CPAs) Before the State and Local Boards of Equalization Constitutes the Practice of Law.

Supreme Court of Tennessee,
at Nashville.

Sept. 11, 1995.

a determination of the constitutionality of Tenn.Code Ann. § 67–5–1514 (1994), which provides that taxpayers contesting the assessment of their real and personal property before boards of equalization may be represented by non-attorney agents. Specifically, the petitioners ask that this Court determine whether the statute violates the separation of powers provisions of the Tennessee Constitution by sanctioning the unauthorized practice of law and thereby infringing upon this Court's inherent authority to regulate the practice of law.

Numerous groups affected by the legislation filed responses to the Attorney General's petition.[1] After oral argument, this Court determined that the petition could not be resolved solely on the basis of legal issues without an underlying factual foundation. As a result, we appointed Chancellor Robert S. Brandt as Special Master for the purpose of developing a factual record and making findings of fact and conclusions of law.

After an evidentiary hearing, Chancellor Brandt filed a report with this Court, making certain findings of fact and upholding the constitutionality of the statute. Thereafter, parties participating in the hearing before the Special Master were given an opportunity to file briefs in this Court.[2] For the reasons articulated below, we adopt and affirm the Special Master's findings of fact. The Special Master's conclusions of law are affirmed as modified.

## FACTUAL BACKGROUND

In Tennessee, traditionally, appraisers and other non-attorney agents have appeared before the boards of equalization on behalf of taxpayers. In 1987, however, the Tennessee Attorney General issued two separate opin-

## OPINION

ANDERSON, Chief Justice.

The Attorney General and the State Board of Equalization have petitioned this Court for

1. Groups initially responding to the petition in this Court include the following: Tennessee Taxpayers' Association, Tennessee Society of Certified Public Accountants, National Council of Property Tax Consultants, International Association of Assessing Officers, Tennessee Bar Association, Institute of Property Taxation, Nashville

Bar Association, Tennessee Association of Business, and others.

2. The law firm of Evans & Petree filed and briefed objections to the Special Master's report. The following organizations filed briefs in support of the Special Master's report: Tennessee Society of Certified Public Accountants; Tennes-

ions[3] that such appearances constitute the unauthorized practice of law.

In an apparent response to those opinions, the General Assembly in 1988 enacted Public Chapter 619, which sanctioned and adopted the traditional practice of non-attorney representation. Taxpayers appearing before boards of equalization to contest the assessment or classification of property by virtue of the 1988 Act codified at Tenn.Code Ann. § 67–5–1514 (1994),[4] are now explicitly entitled to be represented by the following non-attorney agents: (1) immediate family members, (2) officers, directors, or employees of a corporation or other artificial entity, or (3) a registered property appraiser who has satisfied certain statutory criteria. Taxpayers may also be represented by certified public accountants if the only issue on appeal is the proper completion of a schedule listing or establishing the value of tangible personal property.

In addition to codifying the traditional practice of non-attorney representation, the 1988 law also establishes a regulatory mechanism which requires that non-attorney agents register with the State Board, and authorizes the Board to institute disciplinary actions.

To implement the regulatory mechanism established by the 1988 law, the State Board of Equalization promulgated rules. Thereafter, those rules were presented to the Attorney General for approval as to legality, as required by law. The Attorney General did not approve the rules, but instead, along with the State Board of Equalization, filed the petition now before us, requesting a determination of the constitutionality of Tenn.Code Ann. § 67–5–1514 (1994). In summary, the petition explained the need for a constitutional determination as follows:

By enacting a statute authorizing non-attorneys to participate in a representative capacity before the state and local boards of equalization, the General Assembly has implicitly determined that such represen-

tation does not constitute the practice of law. Therefore, the question instantly presented, according to the petition, is whether the General Assembly is the branch of government empowered by the Constitution and state statutes to make that determination. *See* Tenn. Const., Art. II, §§ 1 and 2; Tenn. Const., Art. VI, § 1; Tenn.Code Ann. § 23–3–101 (1994); Tenn. Code Ann. §§ 16–3–503 & 504 (1994); and Tennessee Supreme Court Rules 7, § 1.01; Rule 8, EC 3–5 and Rule 9, § 20.2(e).

Oral argument on the issues raised was held in this Court. Thereafter, we appointed a Special Master, Chancellor Robert S. Brandt, to develop a factual record and requested that findings of fact and conclusions of law be made with regard to the following issues:

(1) The specific acts performed by and the circumstances under which appraisers and other non-attorneys' act, appear and participate' before the State Board of Equalization and county boards of equalization, including all relevant acts prior and subsequent to such hearings;

(2) The legal and factual issues addressed by such non-attorneys as agents for taxpayers in their appearances before said bodies and otherwise; and

(3) The legal and factual issues raised by the petition and responses thereto in the context of proof presented to the master.

After an evidentiary hearing, the Special Master filed a report with this Court, which found, as a matter of fact, that the "services performed by non-attorney agents on behalf of either taxpayers or taxing authorities does (sic) not constitute the practice of law." The Special Master also found that the specific acts performed by attorneys and non-attorney representatives consisted almost exclusively of providing information about property value, and that legal issues are not addressed by taxpayer agents. As a matter of law, the Special Master concluded that the

---

see Taxpayers' Association; and Tennessee Association of Business.

**3.** *See* Op.Tenn.Atty.Gen. No. 87–58 (April 2, 1987) and Op.Tenn.Atty.Gen. No. 87–183 (Dec. 8, 1987).

**4.** The full text of Tenn.Code Ann. § 67–5–1514 is attached as Appendix I to this opinion.

General Assembly was acting within its constitutional authority when it adopted Tenn. Code Ann. § 67–5–1514 (1994). A portion of the Special Master's report [5] is reproduced below.

## SPECIAL MASTER'S REPORT

### Part III

### THE LEGAL AND FACTUAL ISSUES RAISED

#### A. Section 1514 does not authorize the practice of law by non-attorneys.

The services performed by non-attorneys on behalf of either taxpayers or taxing authorities does not constitute the practice of law. The Code of Professional Responsibility adopted by the Tennessee Supreme Court provides that "the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer." Tennessee Supreme Court Rule 8, EC 3–5.

Appraisal appeals are initiated by filing a fill-in-the-blank form with the local board of equalization (Ex. 1 & 2). The only information placed on the form is the identity of the property. No legal training, skill or judgment is required for identifying the property on the form.

The next step is often a conference with the local taxing authority. The taxing authority is represented by the appraiser or a deputy. Appeals often end at this stage because the taxing authority may agree that the information presented on behalf of the taxpayer supports the taxpayer's valuation or because the taxing authority and the taxpayer may agree on a compromise assessment. No legal training, skill or judgment is required to participate in these conferences.

If the case does not end with a conference, a hearing is held before the local board of equalization. The hearings are informal. No rules of procedure or evidence are followed. The hearings are essentially non-adversarial, information gathering sessions.

Very few of the members of the local boards are attorneys. There are no opening statements or closing arguments. There is no direct or cross-examination of witnesses. Information is simply given in narrative form. No legal training, skill or judgment is required to participate in the hearings.

The next step is an appeal to the State Board of Equalization. Taxpayers and taxing authorities can appeal, but appeals by taxing authorities are rare. Once an appeal is requested, the case is assigned to an administrative law judge (ALJ). Hearings before the ALJs [sic] are informal. They do not resemble trials. Information is given in narrative form. Questions may be asked, but not in the form of direct and cross examination. The rules of evidence are not enforced. No legal training, skill, or judgment is required to participate in the ALJ hearings.

A party dissatisfied with an ALJ decision can obtain review by the Assessment Appeals Commission (AAC) of the State Board of Equalization. Requests for review by the AAC are quite informal. The AAC will accept most anything in writing expressing a desire for a review. Fill-in-the-blank forms that contain minimal information about the property are also used (Ex. 9).

Hearings before the AAC are informal. If there is discovery, it usually consists of exchanging papers. Depositions are not taken. Opening statements and closing arguments are not usually made. Most members of the AAC are not attorneys. Much of the information is obtained through questions asked by AAC members. The rules of evidence are not enforced. Information is usually given in narrative form. Questions are asked of people giving information, but it is rarely in the form of direct and cross-examination. No legal training, skill, [or] judgment is required to assist taxpayers or taxing authorities at hearings before the AAC.

5. The full text of the Special Master's report is attached as Appendix II to this opinion.

Final review by the State Board of Equalization is discretionary and is seldom granted.

As noted, most of the handful of attorneys who represent taxpayers are also registered agents who appear in that capacity and give information to the board rather than conduct themselves as attorneys.

Little if any of the work done by the Memphis law firm that assists taxpayers (apparently the only firm in Tennessee that represents taxpayers) can be said to be the type of work regularly performed by attorneys. The work consists of processing a large volume of appeals by identifying property on the fill-in-the-blank forms, then gathering information about the property and presenting it informally to either the assessor or assessor['s] deputy in a conference or to a board in the informal hearings. One member of the firm was asked to identify legal issues in assessment appeals. Though she attempted to do so, she never really identified any.

The governing authority for assessments is not the statutes and cases usually relied upon by courts and cited by attorneys. Rather, it is a manual prepared by the Division of Property Assessment of the Office of the State Comptroller.

**B. The Enactment of § 1514 is within the power conferred on the General Assembly by Article Two, Section 28 of the Tennessee Constitution.**

There is no provision in the Tennessee Constitution that specifically grants the Tennessee Supreme Court the authority to regulate the practice of law. Rather, the authority derives from the doctrine of separation of powers expressed in Article Two, Sections 1 & 2 of the Constitution. *Cantor v. Brading*, 494 S.W.2d 139, 141 (Tenn.Ct.App.1973). The authority to regulate the practice of law has been described as "inherent power" that results from the Court's position in the judicial branch of government. *Petition of Tennessee Bar Association*, 532 S.W.2d 224, 229 (Tenn.1975).

The Constitution, at Article II, Section 28, specifically grants the taxing power to

the Legislature. It provides in part that "the value and definition of property in each class or subclass [is] to be ascertained in such manner as the Legislature shall direct." Thus, the same Constitution that implicitly gives the Supreme Court authority to regulate the practice of law explicitly gives the Legislature the authority to decide the manner in which property value will be ascertained.

This explicit grant of authority is broad enough to authorize the Legislature to permit non-attorneys to assist taxpayers and taxing authorities in assessment appeals. The Supreme Court does not have the authority under the Constitution to regulate any non-judicial phase of the valuation process, including determining the qualifications of the persons or entities who can assist taxpayers and taxing authorities in assessment appeals.

Based upon our review of the record of the hearing before the Special Master, as well as the briefs filed in this Court, we adopt and affirm the Preliminary Findings, Part I, Part II, and Part III A of the Special Master's report. Part III B of the Special Master's report, containing the Master's conclusions of law, is affirmed as modified below.

### REGULATION OF THE UNAUTHORIZED PRACTICE OF LAW

■ The supreme judicial power of this State is "vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace." Tenn. Const. Art. VI, § 1. As a result of that broad grant of power, it has long been recognized and widely accepted that the Tennessee Supreme Court is the repository of the inherent power of the judiciary in this State. *See Petition of Tennessee Bar Ass'n*, 532 S.W.2d 224 (Tenn.1975); *Belmont v. Board of Law Examiners*, 511 S.W.2d 461, 462 (Tenn. 1974); *Cantor v. Brading*, 494 S.W.2d 139, 142 (Tenn.App.1973). Indeed, Tenn.Code Ann. §§ 16–3–503 & 504 (1994), declare that this Court possesses the broad conference of full, plenary, and discretionary inherent pow-

er that existed at common law at the time of the adoption of our Constitution.

■ Included within this Court's inherent power is the essential and fundamental right to prescribe and administer rules pertaining to the licensing and admission of attorneys. *Id.; see also Ramsey v. Board of Professional Responsibility of the Tennessee Supreme Court,* 771 S.W.2d 116, 118 (Tenn. 1989); *Petition of Tennessee Bar Ass'n,* 539 S.W.2d 805, 807 (Tenn.1976); *Petition for Rule of Court Activating, Integrating and Unifying the State Bar of Tennessee,* 199 Tenn. 78, 282 S.W.2d 782 (1955). As a result, this Court exercises original jurisdiction over issues pertaining to the practice of law.

As was explained in *Petition for Rule of Court, supra,*

> If Courts have inherent power to prescribe qualifications required for the practice of law, it seems to follow, as held by the Supreme Court of Massachusetts, in *Collins v. Godfrey,* 324 Mass. 574, 87 N.E.2d 838, 841, that "the Supreme Judicial Court, as under the Constitution the highest court in the Commonwealth, is the proper representative of the judicial department and the repository of the power." This Court's power, then, in this respect is original, rather than appellate.

*Id.* at 83, 282 S.W.2d at 784. Thus, while we have considered and discussed on several previous occasions our inherent authority to regulate the licensing and admission of attorneys, as well as our concomitant original jurisdiction over such matters, it appears that this petition presents an issue of first impression as to whether this Court's inherent power and original jurisdiction include the right to regulate and prevent the unauthorized practice of law.

The vast majority of supreme courts of other jurisdictions considering the issue have concluded that the state judiciary's inherent power includes the authority and the original jurisdiction to prevent the unauthorized practice of law. For example, the Supreme Court of Arizona held in *Hunt v. Maricopa County Employees Merit Sys. Comm'n,* 127 Ariz. 259, 619 P.2d 1036, 1039 (1980), that "the great weight of authority is in accord with the proposition that the ultimate author-

ity for defining, regulating and controlling the practice of law is vested in the Judiciary." An early illustrative case is the holding of the West Virginia Supreme Court in *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959), that "the judicial department ... has the inherent power to define, supervise, regulate and control the practice of law and the Legislature can not restrict or impair this power of the courts or permit or authorize laymen to engage in the practice of law." A more recent application of the rule occurred in *The Florida Bar re Advisory Opinion HRS Nonlawyer Counselor,* 518 So.2d 1270 (Fla.1988), where the Florida Supreme Court held that "this Court 'shall have exclusive jurisdiction to regulate the admission of persons to the practice of law,' and the attending power to prevent the unauthorized practice of law." *See also Unauthorized Practice of Law Comm. of Supreme Court of Colorado v. Employers Unity, Inc.,* 716 P.2d 460, 463 (Colo.1986); *Conway–Bogue Realty Inv. Co. v. Denver Bar Ass'n,* 135 Colo. 398, 312 P.2d 998, 1002 (1957); *Brookens v. Comm. on Unauthorized Practice of Law,* 538 A.2d 1120, 1125, note 13 (D.C.App.1988); *Florida Bar v. Moses,* 380 So.2d 412, 417 (Fla.1980); *Idaho State Bar Ass'n v. Idaho Public Utilities Comm'n,* 102 Idaho 672, 637 P.2d 1168, 1171 (1981); *Professional Adjusters, Inc. v. Tandon,* 433 N.E.2d 779, 783 (Ind.1982); *Reed v. Labor and Indus. Relations Comm'n,* 789 S.W.2d 19 (Mo. banc 1990); *State ex rel. Johnson v. Childe,* 139 Neb. 91, 295 N.W. 381, 382 (1941); *Henize v. Giles,* 22 Ohio St.3d 213, 490 N.E.2d 585, 588–89 (1986); *Unauthorized Practice of Law Comm. v. State, Dept. of Workers' Compensation,* 543 A.2d 662, 664 (R.I.1988); *In Re Unauthorized Practice of Law Rules Proposed by South Carolina Bar,* 309 S.C. 304, 422 S.E.2d 123, 124 (1992); *State ex rel. Reynolds v. Dinger,* 14 Wis.2d 193, 109 N.W.2d 685, 692 (1961).

■ We conclude that as the court of last resort in this state and as the representative of the judicial branch of government, this Court possesses not only the inherent supervisory power to regulate the practice of law, but also the corollary power to prevent the unauthorized practice of law. That conclu-

sion is buttressed by our own rules which provide that "[n]o person shall engage in the 'practice of law' or the 'law business' in Tennessee, *except pursuant to the authority of this Court ...*," Rule 7, § 1.01, Rules of the Tennessee Supreme Court (emphasis added), as well as the legislative declarations recognizing this Court's broad, full, plenary, and discretionary inherent powers. Tenn.Code Ann. §§ 16–3–503 & 504 (1994). Essential to and interrelated with that inherent power is the concomitant authority, when circumstances warrant, to exercise original jurisdiction over matters concerning the unauthorized practice of law within this State. *See Petition of Tennessee Bar Ass'n, supra,* 539 S.W.2d at 807; *Petition of Tennessee Bar Ass'n, supra,* 532 S.W.2d at 226; *Belmont v. Board of Law Examiners, supra,* 511 S.W.2d at 462. Indeed, it is by virtue of this Court's inherent authority to regulate the unauthorized practice of law that we exercised original jurisdiction in the present proceeding.

Although acknowledging this Court's inherent power to regulate the unauthorized practice of law, the Special Master concluded that the power does not extend to any non-judicial phase of the valuation process, including determining the qualifications of the persons or entities who can assist taxpayers and taxing authorities in assessment appeals, because the Constitution specifically grants to the Legislature the taxing power and provides that "the value and definition of property in each class or subclass [is] to be ascertained in such manner as the Legislature shall direct." Tenn. Const. Art. II, § 28.

The Master's conclusion is no doubt based on the principle of separation of powers which is fundamental to American constitutional government and is expressed in Article II, Sections 1 and 2 of the Tennessee Constitution as follows:

> **Sec. 1. Division of powers.**—The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial.

> **Sec. 2. Limitation of powers.**—No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the

others, except in the cases herein directed or permitted.

■ Despite these explicit constitutional provisions, it is impossible to preserve perfectly the "theoretical lines of demarcation between the executive, legislative and judicial branches of government." *Underwood v. State,* 529 S.W.2d 45, 47 (Tenn.1975). Indeed there is, by necessity, a certain amount of overlap because the three branches of government are interdependent. *Id.* The Special Master, however, interpreted Art. II, Sec. 28 in a manner that would divest this Court of any authority to regulate the unauthorized practice of law before the boards of equalization. This interpretation is too broad. Although the legislative branch is vested with the authority to designate the method by which the value and classification of property is to be ascertained, this Court is the only branch of government that possesses the inherent power to determine whether the method so designated by the legislature permits the unauthorized practice of law. That rule controls despite the fact that the non-attorney agents are participating in administrative proceedings rather than court proceedings. *See Application of New Jersey Soc. of Certified Pub. Accountants,* 102 N.J. 231, 507 A.2d 711, 714 (1986); *West Virginia State Bar v. Earley, supra,* 109 S.E.2d at 432; *State ex rel. Reynolds v. Dinger, supra,* 109 N.W.2d at 690; *Slimm v. Yates,* 236 N.J.Super. 558, 566 A.2d 561, 563 (1989).

■ By so saying, we do not imply that the General Assembly is completely without authority to enact legislation regarding the practice of law. As this Court previously has explained,

> [t]he inherent right of Courts to prescribe qualifications necessary for the practice of law does not mean that the Legislature is without authority in that field. The property, rights, liberties and lives of people are continuously entrusted to lawyers. So, the State is vitally interested in the qualifications and integrity of those into whose hands such vital trusts are continuously placed. Thus, a legislative requirement that individuals who would practice this profession must first meet certain reasonable conditions and qualifications is only

the exercise by the Legislature of the police power with which that department of our government is vested. *Lamb v. Whitaker*, 171 Tenn. 485, 490, 105 S.W.2d 105.

> But the exercise of such authority by the Legislature does not mean that this Court, in the exercise of its authority within the premises, may not require qualifications more extensive than those exacted by the Legislature.

*In Re Petition for Court Rule, supra,* 282 S.W.2d at 784 (emphasis added). This general rule is followed in other jurisdictions as well, and was expressed by the Rhode Island Supreme Court in *Unauthorized Practice of Law Comm. v. State, Dept. of Workers' Compensation, supra,* as follows:

> It has long been the law of this state that the definition of the practice of law and the determination concerning who may practice law is exclusively within the province of this court and further, that the Legislature may act in aid of this power but may not grant the right to anyone to practice law save in accordance with standards enunciated by this court.

543 A.2d at 664.

■ The issue in this case therefore becomes whether the General Assembly, by enacting Tenn.Code Ann. § 67–5–1514 (1994), sanctioned and permitted the unauthorized practice of law and thereby infringed upon this Court's constitutional role and inherent authority. Initially, we note that the general rules of statutory construction apply in this case. Accordingly, in reviewing this statute for a possible constitutional infirmity, we are required to indulge every presumption and resolve every doubt in favor of the constitutionality of the statute. *State v. Lyons,* 802 S.W.2d 590, 592 (Tenn.1990). That general rule applies with even greater force in this case where the facial constitutional validity of the statute is questioned. *Davis–Kidd Booksellers, Inc. v. McWherter,* 866 S.W.2d 520 (Tenn.1993); *Idaho State Bar Ass'n v. Idaho Pub. Util. Comm'n, supra,* 637 P.2d at 1170.

In analyzing the validity of the statute, we adopt the summary and description of the process contained within the Special Master's report. We agree with the Special Master that Tennessee Supreme Court Rule 8, EC 3–5 is the standard by which to determine whether the services performed by the non-attorney agents constitute the practice of law. That ethical consideration appears in the Code of Professional Responsibility following Canon 3, which directs that "[a] lawyer should assist in preventing the unauthorized practice of law." The ethical consideration specifically provides as follows:

> It is neither necessary nor desirable to attempt the formulation of a single specific definition of what constitutes the practice of law. Functionally the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of the lawyer is his educated ability to relate the general body and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment. Where this professional judgment is not involved, non-lawyers, such as court clerks, police officers, abstracters, and many governmental employees, may engage in occupations that require a special knowledge of law in certain areas. But the services of a lawyer are essential in the public interest whenever the exercise of professional legal judgment is required.

Our decision to adopt the general standard contained within Ethical Consideration 3–5, is consistent with the rule observed in other jurisdictions. *See, e.g., Conway–Bogue Realty Inv. Co. v. Denver Bar Ass'n, supra,* 312 P.2d at 1008.

In adopting the general definition contained within Ethical Consideration 3–5, we note that the term "practice of law" is defined more specifically in Tennessee Supreme Court Rule 9, § 20.2(e).[6] However, that

---

6. "The term, "practice of law" shall be defined as any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy, in or out of court, rendered in respect to the rights, duties, regulations, liabilities or business relations of one requiring the services. It shall encompass all public and private positions in which the attorney may be

broad definition is contained within a rule requiring *attorneys* who practice law to pay an annual disciplinary fee. The rule was not designed nor intended to regulate the unauthorized practice of law. Instead it is a regulation of the persons who have been admitted to practice law. Equally inapplicable in the context of this proceeding is Supreme Court Rule 7, § 1.01, which provides that,

> No person shall engage in the "practice of law" or the "law business" in Tennessee, except pursuant to the authority of this Court, as evidenced by a license issued in accordance with this Rule, or in accordance with the provisions of this Rule governing special or limited practice.

Although, in implementing that rule, this Court incorporated the definitions of "practice of law" and "law business" as written by the General Assembly,[7] " 'practice of law' for purposes of admission is necessarily broader than 'practice of law' for purposes of unauthorized practice." *See* Tennessee Board of Law Examiners' Statement of Policy Concerning the Meaning of "Practice of Law," Sept. 25, 1984, *adopted* by this Court, Volume 267 Tennessee Decisions, at p. XXXI. Thus, we do not consider Rule 7, § 1.01 controlling in this proceeding.

The definitions of "law business" and "practice of law," contained in Tenn.Code Ann. § 23–3–101 (1994), are also incorporated within Tenn.Code Ann. § 23–3–103 (1994), which prohibits the unauthorized practice of law and provides, in pertinent part that,

> (a) No person shall engage in the "practice of law" or do "law business," or both, as defined in § 23–3–101, unless such person has been duly licensed therefor, and while such person's license therefor is in full force and effect, nor shall any association

or corporation engage in the "practice of the law" or do "law business," or both, as defined in § 23–3–101.

Persons or entities violating that prohibition commit a Class A misdemeanor and may be subject to damages for three times the amount of any fee received as a result of the prohibited activities. Tenn.Code Ann. § 23–3–103(b) (1994). By these statutes, the General Assembly has provided a penalty for the unauthorized practice of law. We view this as an aid to the inherent power of this Court rather than an infringement upon our constitutional and inherent responsibilities. In determining whether Tenn.Code Ann. § 67–5–1514 permits the unauthorized practice of law, we are not bound by the definitions of "practice of law" and "law business" employed in these penalty statutes.

■ As we have previously stated, it is the duty of this Court to resolve doubts in favor of the constitutionality of statutes. Accordingly, we have determined that the definitions contained within Tenn.Code Ann. § 23–3–101 (1994), must be read in conjunction with Tennessee Supreme Court Rule 8, EC 3–5. Thus, the acts enumerated in the definitions of "law business" and "practice of law" contained within Tenn.Code Ann. § 23–3–101 (1994), if performed by a non-attorney constitute the unauthorized practice of law only if the doing of those acts requires "the professional judgment of a lawyer." As recognized in Canon 3, the essence of professional judgment is the lawyer's educated ability to relate the general body and philosophy of law to a specific legal problem of a client. Tennessee Supreme Court Rule 8, EC 3–5.

■ Our interpretation of these various statutory and rule provisions is in keeping with the purpose of regulation governing the

---

called upon to examine the law or pass upon the legal effect of any act, document or law."

7. Tenn.Code Ann. § 23–3–101 (1994) defines those terms as follows: "Law business" means the advising or counseling for a valuable consideration of any person, firm, association, or corporation, as to any secular law, or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular right, or the doing of any act for a valuable consideration in a representative capacity, ob-

taining or tending to secure for any person, firm, association or corporation any property or property rights whatsoever; and (2) "Practice of law" means the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

unauthorized practice of law, which is to "serve the public right to protection against unlearned and unskilled advice in matters relating to the science of the law." *Application of New Jersey Soc. of Certified Pub. Accountants, supra,* 507 A.2d at 714; *see also, Florida Bar re Advisory Opinion HRS Nonlawyer Counselor, supra,* 518 So.2d at 1272. Indeed, it is our responsibility to "regulate the practice of law and to restrain such practice by laymen in a common-sense way in order to protect primarily the interest of the public and not to hamper and burden such interest with impractical technical restraints no matter how well supported such restraint may be from the standpoint of pure logic." *Cowern v. Nelson,* 207 Minn. 642, 290 N.W. 795, 797 (1940); *Hunt v. Maricopa County Employees Merit Sys. Comm., supra,* 619 P.2d at 1040; *Henize v. Giles, supra,* 490 N.E.2d at 589; *State ex rel. Reynolds v. Dinger, supra,* 109 N.W.2d at 691.

### CONCLUSION

 Applying the foregoing principles to the facts found by the Special Master, which are overwhelmingly supported by the record in this case, it is clear that no proof was introduced to show that the services performed for taxpayers or taxing authorities before the boards of equalization require the professional judgment of a lawyer. The Special Master thoroughly and accurately discussed each stage of the proceedings before the local and state boards of equalization in Part III A of the report which has been reproduced in this opinion. We adopt the facts as found by the Special Master and affirm the conclusion that Tenn.Code Ann. § 67–5–1514 (1994), does not sanction the unauthorized practice of law. Accordingly, we affirm, as modified, the Special Master's conclusion upholding the constitutionality of that statute.

Costs of this appeal are taxed to the petitioners, the Tennessee Attorney General and Reporter and the State Board of Equalization.

DROWOTA, REID and BIRCH, JJ., and O'BRIEN, Special Justice, concur.

*APPENDIX I*

TENNESSEE CODE ANNOTATED § 67–5–1514 Provides as follows:

(a) At, or in connection with, any conference or hearing held pursuant to this part, or pursuant to part 14 of this chapter, taxpayers and assessors of property shall be entitled to the assistance of a qualified agent and of such other persons as they may wish.

(b) At any conference or hearing held pursuant to this part, or with respect to the filing of appeals pursuant to Sec. 67–5–1412, taxpayers and assessors of property may appear in person, by qualified agent, or, in the case of taxpayers, by a member of the taxpayer's immediate family. An agent shall not have the power to appear for, or to act on behalf of, a taxpayer unless the agent presents a written authorization from the taxpayer at or prior to the conference or hearing.

(c) The following persons are permitted to act, appear and participate as an agent for the taxpayer:

(1) Attorneys;

(2) With respect to a corporation or other artificial entity, its regular officers, directors or employees; and

(3) Where the primary issue of any complaint, protest or appeal pertains to those grounds as provided in Sec. 67–5–1407, any person who presents to the board of equalization a statement of qualifications that such person has four (4) years of experience in real property appraisal and/or assessment valuation, and that such person either has successfully completed not less than one hundred twenty (120) classroom hours of academic instruction in subjects related to property appraisal or assessment of property from a college or university, or from a nationally recognized appraisal or assessment organization approved by the board or, in lieu of such educational requirements, has successfully passed the examination for Tennessee certified assessor as administered by the board. The board may, in its discretion, recognize certain professional designations from appraisal and/or assessment organizations which require qualifications at least

equal to those set forth herein, in which event persons possessing any such designation shall be registered without submission of experience and educational requirements. A corporation engaged in the business of evaluation of property may be registered if its principal officer is registered, but only employees of such corporation who are registered shall be permitted to act as agents for taxpayers. In addition to the foregoing persons, if the only issue of an appeal is proper completion of a schedule listing tangible personal property, and/or establishing the value thereof, a certified public accountant may act, appear and participate as an agent for the taxpayer.

(d) Where the primary issue of any complaint, protest or appeal pertains to those grounds as provided in Sec. 67–5–1407, then all conferences or hearings shall be conducted in an informal manner.

(e) An assessor of property may delegate duties to be performed under this chapter to any of his deputies.

(f)(1) All persons authorized to appear before the board of equalization pursuant to the provisions of subdivision (c)(3) shall register with the board, and the board may reprimand, revoke, or suspend from practice or place on probation or otherwise discipline any agent for any of the acts set forth below:

(A) Procuring or attempting to procure registration pursuant to this part by knowingly making a false statement, submitting false information, or through any form of fraud;

(B) Failing to meet the minimum qualifications established by this section;

(C) Paying money or other valuable consideration, other than as provided for by this section, to any member or employee of the board to procure registration under this section; or

(D) Any act or omission involving dishonesty or fraud that could substantially benefit the registrant or another person or with the intent to substantially injure another person.

(2) The board may adopt additional standards of conduct, if any, regarding all agents when appearing any any conference or hearing pursuant to this section.

(3) There is hereby created within the board a regulatory panel, to consist of six (6) members, each of whom shall serve a two-year term, the members to be selected by the board from among a list of individual agents who are registered with the board and who have been nominated to serve on the panel by individual agents who are registered with the board. The panel may adopt standards of conduct for all agents, which standards then shall be subject to approval by the board. . The majority of the panel constitutes a quorum and the affirmative vote of two-thirds (⅔) majority of the panel, or two-thirds (⅔) majority vote of the board upon appeal, is necessary for disciplinary action against any agent.

(4) Upon receipt of a written complaint made against any agent, the executive secretary, if the executive secretary determines that the complaint warrants an investigation, shall notify the agent, and the agent shall file an answer to the complaint with the executive secretary within forty-five (45) days from receipt of notice. Following receipt of the agent's answer to the complaint, the executive secretary shall appoint an administrative judge from the staff of the board who shall investigate the complaint. The administrative judge may dismiss the complaint or determine that a hearing is required. Any such hearing shall be conducted by the panel, and the panel may discipline any agent in any manner provided in this section. Within forty-five (45) days from the date of the panel's disciplinary decision, the disciplined agent may appeal the panel's decision to the board. In the event of such appeal, the members of the board shall conduct a hearing and may confirm or dismiss the panel's disciplinary decision.

(5) Each agent required to register with the board shall pay an annual registration fee of one hundred dollars ($100).

(g) Any written solicitation of business, by letter, advertisement, or otherwise, by any

person other than an attorney, who qualifies as an agent under this section shall contain, in type large enough to be easily readable, a disclaimer substantially as follows: "Taxpayer agents who are not lawyers may only appear on your behalf before the state board of equalization on matters of classification, assessment, and/or valuation, and may not represent you in a court of law."

(h) A person who is acting as an agent for a taxpayer or for an assessor of property on March 23, 1988, shall have until June 30, 1989, to obtain registration as provided in subsections (a)–(g), and until such date such persons may continue to act as agents.

(i) All other provisions of this section notwithstanding, this section shall not apply in any manner to the representation of a taxpayer by an attorney.

(j) No provision in this section is intended to require that any person must be an attorney, certified public accountant, agent registered with the board, or otherwise in order to act as an agent for a taxpayer before a county board of equalization.

## *APPENDIX II*

IN THE SUPREME COURT OF TENNESSEE

### AT NASHVILLE

NO. 01801–9209–OT–00103

IN RE: PETITION OF CHARLES W. BURSON, ATTORNEY GENERAL OF TENNESSEE, AND THE STATE BOARD OF EQUALIZATION FOR DETERMINATION OF WHETHER REPRESENTATION OF TAXPAYERS BY REGISTERED APPRAISERS AND OTHER NON–ATTORNEYS (CORPORATE EMPLOYEES AND CPA'S) BEFORE THE STATE AND LOCAL BOARDS OF EQUALIZATION CONSTITUTES THE PRACTICE OF LAW

Filed May 4, 1994
### SPECIAL MASTER'S REPORT

#### The Statute

In 1988, the Tennessee General Assembly enacted chapter 619, Public Acts of 1988, T.C.A. § 67–5–1514 (hereafter, § 1514). In it the Legislature specified four classes of people who are authorized to assist taxpayers with appeals to boards of equalization and in conferences with local assessors: (1) a member of the taxpayer's immediate family;[1] (2) attorneys; (3) officers, directors or employees of corporations or any "other artificial entity"; and (4) registered agents.[2]

The statute also provides that assessors are permitted to appear in person or through a deputy.

Section 1514 requires that registered agents obtain specified education or pass an examination and that they have at least four years experience in real property appraisals. A registered agent regulatory board is established and given jurisdiction to license and discipline agents.

#### The Petition

On September 2, 1992, the Tennessee Attorney General filed a petition with the Tennessee Supreme Court entitled "Petition for Determination of Whether Representation of Taxpayers by Registered Appraisers and Other Non–Attorneys Before the State and Local Boards of Equalization Constitutes the Practice of Law." The Supreme Court determined that the issues raised by the petition could not be resolved solely on legal issues and that "a factual record must be developed."

On July 22, 1993, the Supreme Court appointed the Special Master to hear proof on three issues:

---

**1.** The statute does not define "member of immediate family."

**2.** The statute does not use the term "registered agent," but the property taxing establishment refers to agents who are registered by that term.

(1) The specific acts performed by and the circumstances under which appraisers and other non-attorneys act, appear and participate before the State Board of Equalization and county boards of equalization, including all relevant acts prior and subsequent to such hearings;

(2) The legal and factual issues addressed by such non-attorneys as agents for taxpayers in their appearances before said bodies and otherwise; and

(3) The legal and factual issues raised by the petition and responses thereto in the context of proof presented to the master.

## Special Master Proceedings

The case before the Special Master progressed essentially the same as a trial court case although there were no pleadings. The parties divided into two groups, one that advocated that § 1504 authorizes the practice of law by non-attorneys and is unconstitutional (the Proponents) and the other that advocated that § 1504 does not authorize the practice of law and is not unconstitutional (the Opponents).

The initiative for the Proponents was taken by a Memphis law firm that assists taxpayers in appeals for a fee. The initiative for the Opponents was taken by registered agents and by corporations that use employees to assist in appraisal appeals.

Several interested parties were not represented. No one appeared on behalf of residential taxpayers. No one appeared on behalf of unincorporated business taxpayers. No one appeared on behalf of unincorporated associations. No one appeared on behalf of taxing authorities. The two bar associations that filed appearances in the Supreme Court did not participate.

An evidentiary hearing was held in Nashville on April 4–6, 1994. Among the witnesses who testified were attorneys who assist taxpayers, registered agents, the Executive Director of the State Board of Equalization, an administrative law judge for the Board, a charter member of the Board's Assessment Appeals Commission, assessors or their deputies from Davidson, Hamilton, and Knox Counties, and a representative of the Shelby County Board of Equalization. Fifty eight exhibits were introduced. Excellent briefs were filed.

## Preliminary Findings

There are several preliminary findings that are not directly responsive to the Supreme Court's three issues but which are necessary to place the Special Master's report in context.

– Section 1514 did not expand the list of representatives authorized to represent taxpayers or taxing authorities. For the most part, it merely codified the existing practice.

– There is no evidence that anyone is dissatisfied with the practice codified in § 1514.

– Restricting taxpayer and taxing authority assistance to attorneys will substantially alter and disrupt the appeal process and is likely produce the following consequences:

(1) Many individual taxpayers, smaller incorporated businesses, partnerships, and unincorporated associations will be effectively precluded from appealing assessments. The amount of potential tax savings is too small for attorneys charging contingent fees to assist taxpayers, and taxpayers could not afford to pay attorney fees for assistance now being provided by family members, employees, partners, or association members.

(2) The cost to county governments will be enormous. They will be required to employ large numbers of attorneys to perform tasks now performed by assessors or their deputies including conferring with taxpayers and making presentations to boards.

(3) Proceedings that are now informal will become more formal, thus increasing the cost to all parties involved.

– There is no credible evidence that attorneys can better represent taxpayers and taxing authorities than the others who are authorized to do so. Indeed, the evidence is to the contrary. Registered agents, employees of businesses, and members of unincorporated associations can better represent taxpayers than can attorneys. Likewise, assessors

or their deputies can better represent taxing authorities than can attorneys.

— Section 1504 requires minimum qualifications for registered agents. Attorneys, on the other hand, are not required to have any particular qualifications.

— Less than ten attorneys in the entire state of Tennessee regularly represent taxpayers in assessment appeals. Most of those attorneys were previously employed in state government in the assessment process in one capacity or another. They are also registered agents and usually appear in that capacity rather than as attorneys. Apparently, only two or three attorneys in Tennessee act as advocates when representing taxpayers in assessment appeals.

— No attorneys regularly represent the taxing authorities in assessment appeals.

— There is no evidence that any more attorneys are even interested in representing taxpayers or taxing authorities in appraisal appeals.

— There was testimony that every other state except New Jersey permits registered agents and other non-attorneys to assist taxpayers with assessment appeals. The non-lawyer prohibition in New Jersey was enacted by its legislature, not the state courts.

## I

### SPECIFIC ACTS PERFORMED BY NON–ATTORNEY REP-RESENTATIVES

This question is more fully answered in part III(A) of this report.

The evidence offered was insufficient for the Special Master to make any findings regarding the specific acts performed by family members, business owners, and members of unincorporated associations. The evidence was limited to acts performed by registered agents, corporate employees, and assessors or their deputies.

The specific acts performed by these non-attorney representatives—and attorneys too for that matter—consist almost exclusively of providing information about property value.

For commercial property, this is usually information about of income or potential income. For residential property, it is often information about comparable sales.

## II

### LEGAL AND FACTUAL ISSUES ADDRESSED BY TAXPAYER AGENTS

Legal issues are not addressed by taxpayer agents. Members of a taxpayer's immediate family and officers, directors or employees of a corporation or any "other artificial entity" are permitted to represent taxpayers on the factual issues of classification and value. Registered agents are permitted to represent taxpayers only on the factual issue of value.

In actual practice, in practically every appeal at every level, value is the only issue addressed by any taxpayer agent.

## III

### THE LEGAL AND FACTUAL ISSUES RAISED

**A. Section 1514 does not authorize the practice of law by non-attorneys.**

The services performed by non-attorneys on behalf of either taxpayers or taxing authorities does not constitute the practice of law. The Code of Professional Responsibility adopted by the Tennessee Supreme Court provides that "the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer." Tennessee Supreme Court Rule 8, EC 3–5.

Appraisal appeals are initiated by filing a fill-in-the blank form with the local board of equalization (Ex. 1 & 2). The only information placed on the form is the identity of the property. No legal training, skill or judgment is required for identifying the property on the form.

The next step is often a conference with the local taxing authority. The taxing authority is represented by the appraiser or a deputy. Appeals often end at this stage because the taxing authority may agree that the information presented on behalf of the

taxpayer supports the taxpayer's valuation or because the taxing authority and the taxpayer may agree on a compromise assessment. No legal training, skill or judgment is required to participate in these conferences.

If the case does not end with a conference, a hearing is held before the local board of equalization. The hearings are informal. No rules of procedure or evidence are followed. The hearings are essentially non-adversarial, information gathering sessions.

Very few of the members of the local boards are attorneys. There are no opening statements or closing arguments. There is no direct or cross-examination of witnesses. Information is simply given in narrative form. No legal training, skill or judgment is required to participate in the hearings.

The next step is an appeal to the State Board of Equalization. Taxpayers and taxing authorities can appeal, but appeals by taxing authorities are rare. Once an appeal is requested, the case is assigned to an administrative law judge (ALJ). Hearings before the ALJ's are informal. They do not resemble trials. Information is given in narrative form. Questions may be asked, but not in the form of direct and cross examination. The rules of evidence are not enforced. No legal training, skill, or judgment is required to participate in the ALJ hearings.

A party dissatisfied with an ALJ decision can obtain review by the Assessment Appeals Commission (AAC) of the State Board of Equalization. Requests for review by the AAC are quite informal. The AAC will accept most anything in writing expressing a desire for a review. Fill-in-the-blank forms that contain minimal information about the property are also used (Ex. 9).

Hearings before the AAC are informal. If there is discovery, it usually consists of exchanging papers. Depositions are not taken. Opening statements and closing arguments are not usually made. Most members of the AAC are not attorneys. Much of the information is obtained through questions asked by AAC members. The rules of evidence are not enforced. Information is usually given in narrative form. Questions are asked of people giving information, but it is rarely in the form of direct and cross-examination. No legal training, skill, judgment is required to assist taxpayers or taxing authorities at hearings before the AAC.

Final review by the State Board of Equalization is discretionary and is seldom granted.

As noted, most of the handful of attorneys who represent taxpayers are also registered agents who appear in that capacity and give information to the board rather than conduct themselves as attorneys.

Little if any of the work done by the Memphis law firm that assists taxpayers (apparently the only firm in Tennessee that represents taxpayers) can be said to be the type of work regularly performed by attorneys. The work consists of processing a large volume of appeals by identifying property on the fill-in-the-blank forms, then gathering information about property and presenting it informally to either the assessor or assessor deputy in a conference or to a board in the informal hearings. One member of the firm was asked to identify legal issues in assessment appeals. Though she attempted to do so, she never really identified any.

The governing authority for assessments is not the statutes and cases usually relied upon by courts and cited by attorneys. Rather, it is a manual prepared by the Division of Property Assessment of the Office of the State Comptroller.

**B. The Enactment of § 1514 is within the power conferred on the General Assembly by Article Two, Section 28 of the Tennessee Constitution.**

There is no provision in the Tennessee Constitution that specifically grants the Tennessee Supreme Court the authority to regulate the practice of law. Rather, the authority derives from the doctrine of separation of powers expressed in Article Two, Sections 1 & 2 of the Constitution. *Cantor v. Brading*, 494 S.W.2d 139, 141 (Tenn.Ct.App.1973). The authority to regulate the practice of law has been described as "inherent power" that results from the Court's position in the judicial branch of government. *Petition of Tennessee Bar Association*, 532 S.W.2d 224, 229 (Tenn.1975).

The Constitution, at Article II, Section 28, specifically grants the taxing power to the Legislature. It provides in part that "the value and definition of property in each class or subclass [is] to be ascertained in such manner as the Legislature shall direct." Thus, the same Constitution that implicitly gives the Supreme Court authority to regulate the practice of law explicitly gives the Legislature that authority to decide the manner in which property value will be ascertained.

This explicit grant of authority is broad enough to authorize the Legislature to permit non-attorneys to assist taxpayers and taxing authorities in assessment appeals. The Supreme Court does not have the authority under the Constitution to regulate any non-judicial phase of the valuation process, including determining the qualifications of the persons or entities who can assist taxpayers and taxing authorities in assessment appeals.

Respectfully Submitted,

/s/ Robert S. Brandt

ROBERT S. BRANDT

Judge, Chancery Court

Special Master