# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
# FILED

**December 10, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| FIFTEENTH JUDICIAL DISTRICT UNIFIED BAR ASSOCIATION, | ) ) ) | |
| Plaintiff/Appellee, | ) ) | |
| | ) ) | Wilson Chancery No. 96302 |
| VS. | ) ) | |
| | ) ) | Appeal No. M1996-00020-COA-R3-CV |
| ANGIE GLASGOW, | ) ) | |
| Defendant/Appellant. | ) | |

## APPEAL FROM THE CHANCERY COURT FOR WILSON COUNTY
## AT LEBANON, TENNESSEE

### THE HONORABLE C.K. SMITH, CHANCELLOR

For the Plaintiff/Appellee:

Robert Evans Lee
Lee & Lee
Lebanon, Tennessee

Ruston L. Hill
Nashville, Tennessee

For the Defendant/Appellant:

Henry Clay Barry
Lebanon, Tennessee

**AFFIRMED AND REMANDED**

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a local bar association's efforts to prevent the owner of a typing service from practicing law without a license. The bar association filed suit in the Chancery Court for Wilson County seeking to enjoin the owner from preparing divorce papers and related documents for her clients. The trial court, sitting without a jury, permanently enjoined the owner from engaging in the unauthorized practice of law. The owner asserts on this appeal that the bar association lacked standing to seek an injunction against her and that the statutory prohibition against the unauthorized practice of law is unconstitutional. We have determined (1) that the bar association has standing to seek injunctive relief, (2) that the trial court correctly determined that the owner was engaging in the unauthorized practice of law, and (3) that the owner has not carried her burden with regard to her constitutional challenges to the statute of outlawing the unauthorized practice of law. Accordingly, we affirm the trial court.

## I.

Angie Glasgow operates a business in Wilson County called Divorce Typing Service. Her clientele consists mostly of low-income persons who seek an uncontested[1] irreconcilable differences divorce and who have decided to represent themselves. The services she provides, for a fee ranging from $99 to $148,[2] consist of (1) preparing the complaint, the marital dissolution agreement, the final divorce decree, and other related documents, (2) suggesting where the papers should be filed, and (3) suggesting "approximately" when the papers should be filed. As a general matter, Ms. Glasgow leaves it up to her clients to file the papers she prepares. However, she concedes that she has, on occasion, filed divorce complaints for her clients.

Ms. Glasgow obtains the information needed to prepare the divorce papers by requiring her clients to complete a questionnaire. This questionnaire elicits personal

information about the parties, information about their agreements concerning the custody and support of the children, and information concerning the division of the parties' real and personal property. If the divorce will affect the title to jointly held real property, the questionnaire permits the parties to request Ms. Glasgow to prepare the necessary quitclaim deeds. The questionnaire also contains space for her clients to list "special clauses" they desire to be included in the "divorce agreement." In addition to requiring her clients to sign the questionnaire, Ms. Glasgow requires them to attest that they have received "no legal advice" from her and that they understand that "there will be no refunds."

In addition to drafting the documents, Ms. Glasgow contacts various judicial officers in connection with her business. She testified that she discusses with the clerk and master's office in which court the divorce should be filed when one or both parties do not live in Wilson County. She also testified that she has discussed with the clerk and master's office when her clients should file the proposed final decree. Based on these conversations, she suggests to her clients where the divorce complaint should be filed and when the final decree should be filed.[3]

The Fifteenth Judicial District Unified Bar Association filed suit in the Chancery Court for Wilson County seeking to enjoin Ms. Glasgow from engaging in the unauthorized practice of law in violation of Tenn. Code Ann. § 23-3-103 (Supp. 1999). Ms. Glasgow moved to dismiss the complaint because the unincorporated bar association lacked standing to sue. The trial court overruled Ms. Glasgow's motion and, following a bench trial, determined that she was practicing law without a license. Accordingly, the trial court enjoined Ms. Glasgow from engaging in the unauthorized practice of law.

## II.
### The Bar Association's Standing

Ms. Glasgow asserts that the bar association does not have standing to seek

to enjoin her from the unauthorized practice of law because it is unincorporated. Without citation to Tennessee authority, she claims that the bar association cannot bring suit in its own name because there is no statutory authority permitting it to do so. This argument overlooks the decisions recognizing that unincorporated associations may have standing to sue on behalf of their members.

The standing doctrine provides courts with a vehicle for determining whether a particular party is entitled to judicial relief. *See Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). A standing inquiry requires the court to determine whether the party seeking relief has a sufficient stake in the outcome of the controversy to warrant the exercise of the court's authority on its behalf. *See Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992); *Browning-Ferris Indus., Inc. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982).

The primary focus of a standing inquiry is on the party seeking relief, not the merits of the party's claim. Accordingly, a party's standing does not hinge on the likelihood that it will succeed on the merits of its claim. *See Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d at 615. However, a party's standing may stand or fall on the nature of its claims. *See Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315, 3325 (1984). Thus, when the claimed injury involves a statutory violation, the court must determine whether the entity seeking judicial relief fits within the classification of persons the statute was intended to protect. *See Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206 (1975); *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d at 615.

The fact that an association is unincorporated does not undermine its ability to seek judicial relief on behalf of its members. Tennessee courts have accorded standing to unincorporated associations in at least two reported cases. *See Barnes*

*v. Fort*, 181 Tenn. 522, 530, 181 S.W.2d 881, 884 (1944); *Curve Elementary Sch. Parent & Teacher's Org. v. Lauderdale County Sch. Bd.*, 608 S.W.2d 855, 858 (Tenn. Ct. App. 1980). In the latter case, this court recognized that an association had standing to sue in its own name on behalf of its members when: (1) its members would otherwise have standing to sue in their own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Curve Elementary Sch. Parent & Teacher's Org. v. Lauderdale County Sch. Bd.*, 608 S.W.2d at 858.

The bar association in this case meets all three preconditions to standing. First, its individual members, the licensed lawyers practicing in the Fifteenth Judicial District, have standing on their own to enjoin Ms. Glasgow from practicing law without a license. In addition to their potential loss of business, these lawyers have palpable interest in the public's perception of the legal profession and the quality of justice in the courts of the Fifteenth Judicial District. Persons engaging in the unauthorized practice of law threaten the quality of justice in the Fifteenth Judicial District. When the quality of the practice of law is threatened, all members of the profession are aggrieved. Second, the interests the bar association seeks to protect are germane to the association's purpose. Finally, there is no need for the individual association members to be personally involved in this suit. The injury caused by Ms. Glasgow's unauthorized practice of law is to the public and the legal profession as a whole. Even though her business reflects on the members of the bar as a whole, no single member is seeking damages for loss of business opportunities or any other recovery.

### III.

### Ms. Glasgow's Activities

An increasing number of persons are undertaking to represent themselves in legal proceedings in which their personal and property rights are at stake. This case does not provide the occasion to analyze the reasons for this phenomenon or the

advisability of participating in judicial proceedings without the assistance of counsel. It does, however, require us to join the ranks of courts that have been called upon to consider whether various sorts of out-of-court lay assistance to individuals engaged in self-representation amounts to the unauthorized practice of law.

Cases involving the unauthorized practice of law are heavily fact-dependent. They require the courts to focus specifically on the conduct of the person alleged to be practicing law without a license. It is not our task as an intermediate appellate court to announce broad rules concerning the types of assistance pro se litigants may obtain from non-lawyers.[4] We leave that responsibility to the Tennessee Supreme Court because it alone has the power to regulate the practice of law in Tennessee. *See In re Petition of Burson*, 909 S.W.2d 768, 773-74 (Tenn. 1995). Our role is to carefully analyze Ms. Glasgow's conduct in light of the commonly accepted understanding of what the practice of law entails and then to determine whether her conduct amounts to the practice of law.

The definition of "[l]aw business" in Tenn. Code Ann. § 23-3-101(1) (Supp. 1999) includes "the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights . . .." Likewise, the definition of "[p]ractice of law" in Tenn. Code Ann. § 23-3-101(2) includes "the drawing of papers, pleadings or documents . . . in connection with proceedings pending or prospective before any court . . .." Both of these statutory definitions must be read in conjunction with Tenn. S. Ct. R. 8, EC 3-5.[5] Thus, the acts included in Tenn. Code Ann. § 23-3-101 constitute the unauthorized practice of law if performed by a non-lawyer only when performing those acts requires the professional judgment of a lawyer. *See In re Petition of Burson*, 909 S.W.2d at 776.

The Tennessee Supreme Court has held that the "preparation and filing of a complaint" is the practice of law because it requires the professional judgment of a lawyer. *See Old Hickory Eng'g & Mach. Co. v. Henry*, 937 S.W.2d 782, 786

(Tenn. 1996). We do not construe the Court's use of the conjunction "and" in the phrase "preparation and filing" to mean that persons who prepare complaints but do not file them are not engaging in the practice of law. The preparation of the complaint is precisely the work that requires a lawyer's professional judgment. Accordingly, we conclude that with its decision in *Old Hickory Eng'g & Mach. Co. v. Henry*, the Court has aligned Tennessee with the majority of jurisdictions holding that the drafting of pleadings and legal documents or the selection and completion of form documents constitutes the practice of law.[6]

Ms. Glasgow, by her own admission, is performing more than mere clerical work for her clients. She is not simply reducing her clients' words to writing or filling in blanks on pre-printed forms at the specific direction of her clients. Rather, she is preparing legal documents that require more legal knowledge than is possessed by ordinary lay persons. She is eliciting information from her clients and then incorporating the information into unique legal documents that she creates. These documents, which include divorce complaints, marital dissolution agreements, final divorce decrees, and quitclaim deeds, will potentially have significant, far-reaching effects not only on her clients, but also on the members of her clients' families. Thus, Ms. Glasgow, merely by creating the complaints and other documents to be filed in court, is engaging in the unauthorized practice of law.

Despite Ms. Glasgow's protestations to the contrary, we conclude that she has also been providing other assistance to her clients that constitutes the unauthorized practice of law. She has been advising her clients concerning how and when to file the papers she prepares,[7] and she has been obtaining this information from the clerk's office on her clients' behalf. Thus, Ms. Glasgow has been engaging in the unauthorized practice of law when she selects the court in which a complaint should be filed and suggests when her clients should file the complaint. Similarly, she is engaging in the unauthorized practice of law when she suggests that her clients file the draft final decree five days before the end of the statutory waiting period.

Ms. Glasgow's own description of the services she provides to her clients provides ample evidentiary support for the trial court's conclusion that she is engaging in the unauthorized practice of law in at least two ways – drafting divorce complaints and associated court papers and quitclaim deeds and advising her clients concerning where and when to file the papers she prepares for them. Accordingly, we affirm both the trial court's conclusion that Ms. Glasgow is engaging in the unauthorized practice of law and the order enjoining her from continuing to engage in the unauthorized practice of law.

## IV.

### The Constitutionality of the Definition of "Practice of Law"

As a final matter, Ms. Glasgow launches a broadside attack on the constitutionality of Tenn. Code Ann. § 23-3-103. She asserts that this statutory prohibition against engaging in the unauthorized practice of law is unconstitutional because (1) it amounts to a prior restraint on her freedom of expression, (2) it is overly broad, and (3) it infringes on the right of the general public to represent themselves in judicial proceedings. We find these constitutional arguments to be procedurally defective.

Constitutional challenges to legislative acts are serious matters, not make-weight arguments. Their importance is reflected in the elaborate rules and procedures governing how these issues must be raised. Tenn. Code Ann. § 29-14-107(b) (1980) and Tenn. R. Civ. P. 24.04 require parties to serve or notify the Attorney General and Reporter that they are challenging the constitutionality of a statute, and Tenn. R. App. P. 32 ensures that the Attorney General and Reporter will receive notice when the constitutionality of a statute is challenged on appeal. These procedural requirements serve two purposes: first, to assure the existence of a genuine case or controversy, and second, to assure that the challenged statute will be

vigorously defended.

The importance of constitutional litigation is also reflected in the substantive rules employed by courts to adjudicate constitutional issues. Courts presume that the challenged statute is constitutional, *see Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997); *In re Petition of Burson*, 909 S.W.2d at 775, and, when possible, to construe statutes in a way that renders them constitutional rather than unconstitutional. *See Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 529-30 (Tenn. 1993). In addition, the burden of rebutting the presumption of constitutionality is on the person challenging the statute. *See Helms v. Tennessee Dep't of Safety*, 987 S.W.2d 545, 549 (Tenn. 1999); *State v. Blanton*, 975 S.W.2d 269, 286 (Tenn. 1998). To carry this burden with regard to a statute enacted pursuant to the State's police power, the person challenging the statute must demonstrate that it is not reasonably related to a legitimate state interest or that it is oppressive. *See Fritts v. Wallace*, 723 S.W.2d 948, 949-50 (Tenn. 1987).

In addition to the requirements specifically applicable to constitutional issues, persons seeking to challenge the constitutionality of a statute on appeal must observe the more generally applicable requirements for presenting issues to an appellate court for decision. At a bare minimum, their briefs must meet the requirements of Tenn. R. App. P. 27 and Tenn. Ct. App. R. 6. They must also provide the court with arguments and authorities supporting their assertion that the challenged statute is unconstitutional. Appellate courts, in their discretion, may decline to consider arguments that do not meet these requirements. *See Hunter v. Burke*, 958 S.W.2d 751, 756 (Tenn. Ct. App. 1997) (issue not adequately briefed); *Wilhite v. Brownsville Concrete Co.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990) (no legal arguments and no supporting authorities); *State ex rel. Dep't of Transp. v. Harvey*, 680 S.W.2d 792, 794-95 (Tenn. Ct. App. 1984) (no supporting authority); *Lowe v. Preferred Truck Leasing, Inc.*, 528 S.W.2d 38, 41 (Tenn. Ct. App. 1975) (no supporting authority).

Ms. Glasgow's constitutional arguments do not meet any of these

requirements. The record contains no indication that she ever notified the Attorney General and Reporter of her challenge to the constitutionality of Tenn. Code Ann. § 23-3-103 as required by Tenn. Code Ann. § 29-14-107(b) and Tenn. R. Civ. P. 24.04. There is likewise no indication that she complied with Tenn. R. App. P. 32 by notifying the Attorney General that she intended to challenge the constitutionality of Tenn. Code Ann. § 23-3-103 on appeal. In addition, the arguments in her brief are superficial at best. They consist of two pages of general, conclusory statements with no citations to legal authority to support her arguments.

The practice of law by untrained persons endangers the public's personal and property rights, as well as the orderly administration of the judicial system. *See Bar Ass'n of Tennessee, Inc. v. Union Planters Title Guar. Co.*, 46 Tenn. App. 100, 125-26, 326 S.W.2d 767, 779 (1959). Thus, the purpose of the statutory prohibition against the unauthorized practice of law protects the public by ensuring that the public receives high quality legal services. *See In re Petition of Burson*, 909 S.W.2d at 776-77; *Haverty Furniture Co. v. Foust*, 174 Tenn. 203, 210, 124 S.W.2d 694, 697 (1939). In light of the salutary purpose of Tenn. Code Ann. § 23-3-103 and the inadequacy of Ms. Glasgow's arguments, we have determined that Ms. Glasgow has failed to carry her burden of overcoming the presumption of the constitutionality of Tenn. Code Ann. § 23-3-103.

## V.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Angie Glasgow.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____

SAMUEL L. LEWIS, JUDGE


_____

BEN H. CANTRELL, JUDGE