# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 5, 2023

## GERALD D. WAGGONER, JR. v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-21-1145     William B. Acree, Senior Judge**

———————————————————

**No. W2022-01294-SC-R3-BP**

———————————————————

A Board of Professional Responsibility hearing panel found that a Shelby County attorney's law license should be suspended for four years based on multiple violations of the Rules of Professional Conduct (RPCs), including RPC 5.5(a). The attorney appealed part of the hearing panel's decision, and the trial court affirmed in part, reversed in part, and modified the sanction to one year. The Board appeals the trial court's decision that the attorney did not violate RPC 5.5(a) by practicing law while his license was suspended. We find that the attorney violated RPC 5.5(a) by continuing to manage and market his law practice; by directly or indirectly communicating with office staff, attorneys, and former clients; and by recruiting and hiring attorneys while his law license was suspended. The hearing panel's decision that the attorney violated RPC 5.5(a) is supported by substantial and material evidence. We hold that the attorney's law license shall be suspended for two years, with eighteen months served on active suspension. This sanction is based on the RPC 5.5(a) violation, as well as the hearing panel's findings that he violated additional RPCs, which he did not appeal, the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards), five aggravating factors, and no mitigating factors. The attorney shall also make appropriate restitution, obtain additional continuing education as ordered by the trial court, and engage a practice monitor during his probated suspension.

**Tenn. Sup. Ct. R. 9, § 33.1(d); Judgment of the Trial Court Reversed in Part;**
**Decision of the Hearing Panel Affirmed in Part, Reversed in Part**

SHARON G. LEE, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and JEFFREY S. BIVINS, HOLLY KIRBY, and SARAH K. CAMPBELL, JJ., joined.

James W. Milam, Brentwood, Tennessee, for the appellant, Board of Professional Responsibility.

Gerald D. Morgan, Spring Hill, Tennessee, for the appellee, Gerald D. Waggoner, Jr.

# OPINION

## I.

Gerald D. Waggoner, Jr. was admitted to practice law in Tennessee in 1989. On August 1, 2017, this Court suspended Mr. Waggoner for three years for removing client funds from his trust account without his client's knowledge or consent and converting the funds for his personal and business use, as well as for making material misrepresentations to the Board about the location of the funds.[1] Mr. Waggoner was required to reimburse his client $48,528.25 (less any amount already paid) as a condition of reinstatement.

In 2019 and 2020, the Board filed a petition and two supplemental petitions for discipline against Mr. Waggoner. Only the findings from the initial petition and the second supplemental petition are considered in this appeal.[2] The initial petition, filed May 2019, alleged that Mr. Waggoner continued to practice law during his suspension by managing and marketing his law firm, Memphis Legal Group, and thus violated RPCs 5.5(a) (unauthorized practice of law) and 8.4(a) and (g) (misconduct). In March 2020, the Board filed a second supplemental petition, alleging that in June 2013, Mr. Waggoner filed personal injury cases in the Shelby County General Sessions Court on behalf of an adult and minor children injured in an automobile accident. Mr. Waggoner settled the cases. In one case, he received the minors' settlement funds but failed to transmit the net proceeds, as ordered by the court, to the court clerk to hold until the minors reached the age of eighteen. In the second case, a minor's settlement was not approved by the court, and the court later dismissed the case for failure to prosecute. Mr. Waggoner did not refile the case. Based on Mr. Waggoner's handling of these court cases, the Board alleged that Mr. Waggoner violated RPCs 1.3 (diligence), 1.4 (communication), 1.15 (safekeeping property and funds), 1.16 (declining or terminating representation), 3.2 (expediting litigation), 3.4(c) (fairness to opposing party and counsel), 5.3 (responsibilities regarding nonlawyer assistants), and 8.4(a) through (d) (misconduct).

---

[1] Order of Enforcement, *In Re: Gerald Denny Waggoner, Jr., BPR #013988*, No. M2017-01434-SC-BAR-BP (Tenn. Aug. 1, 2017).

[2] The first supplemental petition, filed in July 2019, asserted that Mr. Waggoner continued to manage the law practice of Memphis Legal Group after his suspension. In addition, the petition alleged that a client paid Memphis Legal Group in July 2018 to represent her in criminal court, but no attorney appeared in court on her behalf and no legal fees were refunded to her. The hearing panel found Mr. Waggoner had violated RPCs 3.4(c), 5.5(a), 8.1(b), and 8.4(a), (b), and (c). The trial court reversed the panel's findings, and the Board did not appeal the trial court's decision.

Following a December 2020 evidentiary hearing, a Board hearing panel issued its findings of fact and conclusions of law. On the initial petition, the hearing panel found that on August 1, 2017, this Court suspended Mr. Waggoner's law license for three years. At the time of his suspension, Mr. Waggoner had two offices in Memphis: the Waggoner Law Firm on Poplar Avenue and Memphis Legal Group on Summer Avenue. After his suspension, Mr. Waggoner closed the Waggoner Law Firm office, notified his clients of his suspension, and advised his clients that attorney Brad Reasonover would finish their cases or they could hire another attorney. The Memphis Legal Group office, which primarily handled traffic ticket cases, remained open and continued to accept new clients after Mr. Waggoner's August 1, 2017 suspension through August 2018 when he closed the office. After his suspension, Mr. Waggoner communicated with his former clients through Christi Walker, who was Memphis Legal Group's office manager, and through other staff members. Mr. Waggoner interviewed and hired attorneys to staff Memphis Legal Group and otherwise directed and marketed the firm after his suspension.

The hearing panel found that Mr. Waggoner's use of Ms. Walker as an intermediary to communicate with his former clients about their cases and what they "could do" in their cases and who from the Waggoner Law Firm would be in court with them was not a "firewall" against unauthorized practice. The panel also determined Mr. Waggoner's conduct "did nothing more than aid a non-lawyer in the practice of law." The hearing panel concluded that Mr. Waggoner violated RPCs 5.5(a) (unauthorized practice of law),[3] 8.1(b) (bar admission and disciplinary matters),[4] and 8.4(a), (c), and (d) (misconduct).[5]

---

[3] "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Tenn. Sup. Ct. R. 8, RPC 5.5(a).

[4]      An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
          . . .
          (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by RPC 1.6.

Tenn. Sup. Ct. R. 8, RPC 8.1(b).

[5]      It is professional misconduct for a lawyer to:
          (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
          . . .
          (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

On the second supplemental petition, the hearing panel found that Mr. Waggoner filed separate personal injury cases in the Shelby County General Sessions Court in June 2013 for Bennie Stephens and his two minor children for injuries arising from a car accident. After a March 2014 settlement hearing, the trial court approved the minors' settlements. The trial court's orders directed that after payment of attorney fees and medical expenses, the net proceeds of $2,948.80 for each minor were to be deposited with the court clerk and held in an interest-bearing account until the minors turned eighteen. On April 1, 2014, Mr. Waggoner received the settlement checks for the minor children, and the checks were deposited in the bank account of Memphis Legal Group, Inc. On November 12, 2020, Mr. Waggoner paid to the court clerk the minors' funds from a bank account he shared with Ms. Walker. The hearing panel concluded that Mr. Waggoner intentionally withheld the settlement funds, failed to timely deposit the funds with the court clerk, and did not hold the funds separate from his own funds. The minor clients were deprived of the funds and the interest that would have accrued from April 15, 2014, to November 12, 2020. In another matter arising out of the same car accident, Mr. Waggoner represented Mary Vaught and her minor child in a case filed in June 2013 in the Shelby County General Sessions Court. In October 2014, the trial court dismissed the case without prejudice for lack of prosecution. Mr. Waggoner failed to refile the case. The hearing panel concluded that Mr. Waggoner, despite being an experienced attorney, intentionally failed to act with reasonable diligence and promptness while handling the Vaught case. The hearing panel found that Mr. Waggoner violated RPCs 1.3 (diligence),[6] 1.4 (communication),[7] 1.15

---

(d) engage in conduct that is prejudicial to the administration of justice . . . .

Tenn. Sup. Ct. R. 8, RPC 8.4(a), (c)–(d).

[6] "A lawyer shall act with reasonable diligence and promptness in representing a client." Tenn. Sup. Ct. R. 8, RPC 1.3.

[7]    (a) A lawyer shall:
      (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;
      (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
      (3) keep the client reasonably informed about the status of the matter;
      (4) promptly comply with reasonable requests for information[]
      …
      (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Tenn. Sup. Ct. R. 8, RPC 1.4.

- 4 -

(safekeeping property and funds),[8] 1.16 (declining or terminating representation),[9] and 8.4 (misconduct).[10]

The hearing panel determined that suspension was the appropriate baseline standard based on ABA Standards 4.12, 4.42, 6.23, 7.2, and 8.2. The panel found no mitigating factors and six aggravating factors applied to Mr. Waggoner: a pattern of misconduct, failure to acknowledge the wrongful nature of his conduct, prior disciplinary history, multiple offenses, substantial experience in the practice of law, and dishonest or selfish motive. Based on these findings, the hearing panel concluded that Mr. Waggoner's law license should be suspended for four years. The panel also required Mr. Waggoner to pay

---

[8]     (a) A lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds.
    . . .
    (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such funds or other property.

Tenn. Sup. Ct. R. 8, RPC 1.15(a), (d).

[9]     A lawyer who is discharged by a client, or withdraws from representation of a client, shall, to the extent reasonably practicable, take steps to protect the client's interests. Depending on the circumstances, protecting the client's interests may include: . . . (4) promptly surrendering papers and property to which the client is entitled and any work product prepared by the lawyer for the client and for which the lawyer has been compensated . . . .

Tenn. Sup. Ct. R. 8, RPC 1.16(d)(4).

[10]     It is professional misconduct for a lawyer to:
    (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
    …
    (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
    (d) engage in conduct that is prejudicial to the administration of justice;
    …
    (g) knowingly fail to comply with a final court order entered in a proceeding in which the lawyer is a party . . . .

Tenn. Sup. Ct. R. 8, RPC 8.4(a), (c)–(d), (g).

restitution for accrued interest to the minor children in the Stephens case due to his delay in depositing the funds.

*Trial Court Review*

Mr. Waggoner petitioned for review under Tennessee Supreme Court Rule 9, section 33.1(a), challenging the hearing panel's findings related to the initial petition that he violated RPCs 5.5(a), 8.1(b), and 8.4(a), (c), and (d). He did not appeal the panel's findings related to the second supplemental petition that he violated RPCs 1.3, 1.4, 1.15, 1.16, and 8.4 in his handling of the Stephens and Vaught cases.

The trial court reversed the hearing panel's findings that Mr. Waggoner violated RPC 5.5(a) because the trial court could not conclude that Mr. Waggoner applied his professional judgment to a specific client's legal problem. The trial court reversed the panel's decision as to RPC 8.1(b) because of a lack of proof that Mr. Waggoner failed to disclose a necessary fact to the Board during its investigation. Further, the trial court reversed the panel's decision on RPC 8.4(c) because Mr. Waggoner's actions were not deceitful. The trial court affirmed the panel's decision that Mr. Waggoner violated RPC 8.4(a) and (d) by his involvement in hiring attorneys and actively managing Memphis Legal Group while suspended from practicing law. The trial court reversed the panel's decision that Mr. Waggoner's actions constituted a pattern of misconduct that served as an aggravating factor but otherwise affirmed the panel's findings on the remaining aggravating factors and the lack of mitigating factors. Based on its findings, the trial court reduced Mr. Waggoner's suspension from four years to one year. The trial court affirmed the panel's requirement of restitution to the two minor clients and further ordered that Mr. Waggoner obtain twelve additional hours of continuing legal education related to ethics or the handling of client property.

The Board appeals to this Court, challenging the trial court's reversal of the hearing panel's finding that Mr. Waggoner violated RPC 5.5(a) by engaging in the unauthorized practice of law from August 1, 2017, until August 13, 2018, and the reduction of Mr. Waggoner's suspension from four years to one year.[11] The Board argues, in part, that the trial court defined "practice of law" too narrowly and disregarded substantial and material evidence showing that Mr. Waggoner participated in the management and marketing of his

---

[11] *See* Tenn. Sup. Ct. R. 9, § 33.1(d) (allowing "[e]ither party dissatisfied with the decree of the circuit or chancery court [to] prosecute an appeal directly to the [Tennessee Supreme] Court").

wholly owned law firm, in the supervision of its staff, and in the recruitment and hiring of attorneys.[12]

Mr. Waggoner argues that the hearing panel's findings and conclusions regarding the RPC 5.5(a) violation and the aggravating and mitigating factors were unsupported by the evidence and that the hearing panel's sanction was too severe.

## II.

### *Standard of Review*

As the "final and ultimate arbiter of the propriety of the professional conduct of all lawyers practicing in Tennessee," *Talley v. Bd. of Pro. Resp.*, 358 S.W.3d 185, 190 (Tenn. 2011) (citing *Flowers v. Bd. of Pro. Resp.*, 314 S.W.3d 882, 891 (Tenn. 2010); *Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 612 (Tenn. 2010)), we are tasked with "the ultimate disciplinary responsibility for violations of the ethical rules that govern the legal profession," *Sneed*, 301 S.W.3d at 612 (citing *Doe v. Bd. of Pro. Resp.*, 104 S.W.3d 465, 469–70 (Tenn. 2003)). Thus, we review judgments in disciplinary proceedings "in light of our inherent power . . . [and] fundamental right to prescribe and administer rules pertaining to the licensing and admission of attorneys." *Bd. of Pro. Resp. v. Parrish*, 556 S.W.3d 153, 162 (Tenn. 2018) (alteration in original) (internal quotation marks omitted) (quoting *Bd. of Pro. Resp. v. Allison*, 284 S.W.3d 316, 321 (Tenn. 2009)).

When reviewing a disciplinary judgment, we apply the same standard of review as the trial court. *Id.* (citing *Long v. Bd. of Pro. Resp.*, 435 S.W.3d 174, 178 (Tenn. 2014)); *see also* Tenn. Sup. Ct. R. 9, § 33.1(d). Under that standard, we may reverse or modify the hearing panel's decision only where:

---

[12] The parties reference challenges to RPC 8.4(d) and (g) violations in their briefs. The Board states in a footnote in its brief that "[t]he reference to RPC 8.4(d) is a typographical error which was clearly meant to be 8.4(g). RPC 8.4(g) addresses a violation which occurs when a lawyer knowingly violates a final court order in a proceeding in which he is a party." Mr. Waggoner responds by saying that "this Court should reverse the hearing panel's conclusions that Mr. Waggoner violated 8.4(c) and (d), as the [Board] did not even allege such violations in the First Petition." Mr. Waggoner states in a footnote in his brief that "[t]he [Board] does not refer to 8.4(c) in its brief, and thus has not appealed the trial court's reversal of that violation. . . . [T]he [Board] does claim that the trial court's reference to 8.4(d) should have been a reference to 8.4(g), but it did not file a motion in the trial court to address that alleged error." That is the extent of both parties' conclusory statements regarding RPC 8.4(d) and (g). Unpreserved issues raised by parties that are unsupported by authority or citation to the record are waived. Tenn. R. App. P. 13(b); *State v. Bristol*, 654 S.W.3d 917, 925 (Tenn. 2022). Thus, we decline to consider the parties' arguments regarding RPC 8.4(d) and (g).

the rights of the party filing the Petition for Review have been prejudiced because the hearing panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 33.1(b). A hearing panel's decision is supported by "substantial and material evidence" where the evidence "furnishes a reasonably sound factual basis for the decision being reviewed." *Parrish*, 556 S.W.3d at 163 (quoting *Sneed*, 301 S.W.3d at 612). "A reasonably sound basis is less than a preponderance of the evidence but more than a scintilla or glimmer." *Harris v. Bd. of Pro. Resp.*, 645 S.W.3d 125, 137 (Tenn. 2022) (quoting *Beier v. Bd. of Pro. Resp.*, 610 S.W.3d 425, 438 (Tenn. 2020)).

We review questions of law de novo without a presumption of correctness. *Id.* at 136 (citing *Bd. of Pro. Resp. v. Barry*, 545 S.W.3d 408, 420 (Tenn. 2018)). However, we defer to the hearing panel's determinations on questions of fact and the weight given to them. *Id.*; *Long*, 435 S.W.3d at 178 (citing *Allison*, 284 S.W.3d at 323).

*RPC 5.5(a)*

The Board argues that Mr. Waggoner engaged in the unauthorized practice of law during his suspension, and thus violated RPC 5.5(a), by managing, directing, and marketing Memphis Legal Group; by hiring attorneys as independent contractors to operate his law firm; and by communicating with his former clients and staff using his office manager as an intermediary. Mr. Waggoner contends that his actions did not constitute the practice of law.

RPC 5.5(a), standing alone, is relatively simple: "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Tenn. Sup. Ct. R. 8, RPC 5.5(a). Comment 1 provides that RPC 5.5(a) "applies to unauthorized practice of law by a lawyer, whether through the lawyer's direct action or by the lawyer assisting another person." Tenn. Sup. Ct. R. 8, RPC 5.5 cmt. 1. Enforcement of RPC 5.5(a) requires this Court to consider the often-ambiguous contours of what constitutes the practice of law. *Cf.* Tenn. Sup. Ct. R. 8, RPC 5.5 cmt. 2 ("The definition of the practice of law is established by law and varies from one jurisdiction to another.").

In *In re Burson*, the practice of law is described as "relat[ing] to the rendition of services for others that call for the professional judgment of a lawyer." 909 S.W.2d 768, 775 (Tenn. 1995). The "professional judgment of a lawyer" is defined by the lawyer's "educated ability to relate the general body and philosophy of law to a specific legal problem of a client." *Id.* Since *Burson*, Tennessee courts have considered when activities require the "professional judgment of a lawyer" in cases involving the preparation and filing of legal documents and court appearances. *See, e.g.*, *Green v. Bd. of Pro. Resp.*, 567 S.W.3d 700, 714 (Tenn. 2019) (finding a lawyer violated RPC 5.5(a) when he filed a motion to dismiss and discovery requests and was named as counsel on a scheduling order filed with the court before obtaining pro hac vice admission); *Old Hickory Eng'g & Mach. Co. v. Henry*, 937 S.W.2d 782, 786 (Tenn. 1996) ("The preparation and filing of a complaint requires 'the professional judgment of a lawyer,' and is, therefore, the practice of law." (quoting *Burson*, 909 S.W.2d at 776)); *Tenn. Env't Council, Inc. v. Tenn. Water Quality Control Bd.*, 254 S.W.3d 396, 408–09 (Tenn. Ct. App. 2007) ("The petition for a declaratory order identifies issues that require the Environmental Council's representative to exercise professional legal judgment not only in the formal, adversarial proceedings . . . , but in the drafting of such a complex petition.").

This case presents a slightly different issue. Mr. Waggoner did not appear in court on behalf of clients or prepare legal documents. Instead, he continued to be involved in managing and marketing Memphis Legal Group, he hired multiple independent contract attorneys to carry on the legal work of his law firm, and he communicated directly with his law firm's staff and indirectly with his former clients. While we have not previously addressed this issue, the Kansas Supreme Court has reviewed a similar case involving the unauthorized practice of law—*In re Miller*, 238 P.3d 227 (Kan. 2010). Christopher Miller was the sole shareholder and practiced law at a law firm organized as a professional association. *Id.* at 228. After Mr. Miller was suspended for two years by the Kansas Supreme Court, he failed to notify his clients that he had been suspended and maintained a sign outside of his former office identifying himself as an attorney. *Id.* at 228–29, 235. Before his suspension, Mr. Miller arranged for another attorney, Christopher Cowger, to take over his law practice. *Id.* at 229. Mr. Cowger was paid by the corporation on an hourly basis, and his income as an independent contractor was reported to the Internal Revenue Service. *Id.* During Mr. Miller's suspension, a letter was sent to opposing counsel on behalf of one of Mr. Miller's former clients. *Id.* The letter's signature block read, "Sincerely yours, Chris Miller For the Firm." *Id.* Mr. Cowger was named as the president, treasurer, and sole shareholder of the corporation, but Mr. Miller retained financial control and signed all of the corporation's checks. *Id.* at 230–31.

A hearing panel found Mr. Miller violated Kansas Rule of Professional Conduct 5.5[13] and other rules.[14] *Id.* at 231. On appeal, the Kansas Supreme Court rejected Mr. Miller's argument that he did not commit the unauthorized practice of law, finding that neither Mr. Miller nor his corporation had the authority to contract with Mr. Cowger. *Id.* at 236. The *Miller* court reasoned that, because suspended lawyers are forbidden from practicing after their suspension, it logically follows that a "suspended attorney cannot hire an independent contractor to do the legal work which the suspended attorney is precluded from doing." *Id.*; *see* Tenn. Sup. Ct. R. 9, § 12.2(a)(1) ("No attorney suspended under any Section of this Rule shall resume practice until reinstated by order of the Court.").

Mr. Waggoner argues that *Miller* is factually different from his case and provides no guidance. He notes that after his suspension, Mr. Miller continued to work in his law office, displayed an exterior sign identifying himself as an attorney, failed to inform his clients of his suspension, identified himself in letters as an attorney, and maintained control of the corporation's checking accounts and made all financial decisions. *Miller*, 238 P.3d at 228–31, 235.

We agree Mr. Waggoner's actions were not as egregious as the attorney's conduct in *Miller*. Mr. Waggoner did not hold himself out as an attorney, did not continue to work in his office, and notified his clients of his suspension. But these factual distinctions were not the basis for the *Miller* court's ultimate conclusion that a "suspended attorney cannot hire an independent contractor to do the legal work which the suspended attorney is precluded from doing." *Id.* at 236. Although the *Miller* court noted Mr. Miller's failure to notify clients and the public of his suspension, its holding that Mr. Miller was engaged in the unauthorized practice of law did not turn on those facts. *Id.* at 235.

After careful review, we hold that an attorney who has been suspended from the practice of law violates RPC 5.5(a) by managing and marketing his law firm; by directly or indirectly communicating with office staff, attorneys, and former clients; and by recruiting and hiring attorneys to exercise the "professional judgment" that the suspended attorney is forbidden from doing. *Burson*, 909 S.W.2d at 775; *see also Matter of Thonert*, 693 N.E.2d 559, 563 (Ind. 1998) ("[T]he practice of law is not defined only as the giving of legal advice or acting in a representative capacity—it also had been extended by this

---

[13] Kansas Rule of Professional Conduct 5.5(a) is identical to Tennessee's RPC 5.5(a), prohibiting the practice of law "in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist[ing] another in doing so." Kan. Sup. Ct. R. 240, RPC 5.5(a).

[14] Mr. Miller was also found to have violated Kansas Rules of Professional Conduct 8.1(b) (failure to respond to lawful demand for information from disciplinary authority) and 8.4(a) (misconduct) and (g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law). *Miller*, 238 P.3d at 228.

Court to conducting the business management of a law practice."); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 233 (Iowa 2006) (holding that "attempt[s] to assign client cases . . . to another attorney who will sign pertinent documents and keep the law office open during the period of suspension" constitute the unauthorized practice of law); *In re Hosford*, 252 N.W. 843, 846, 849 (S.D. 1934) (holding that a suspended attorney who had associated with another attorney for the purpose of allowing the suspended attorney "to hold his clientele and law business and continue the practice of law" engaged in the unauthorized practice of law).

It would undermine the purpose of the attorney disciplinary process if a suspended attorney could make an end-run around his suspension, practice law by proxy, and continue to generate revenue from the practice of law. *See Hornbeck v. Bd. of Pro. Resp.*, 545 S.W.3d 386, 396–97 (Tenn. 2018) (describing the purposes of the attorney disciplinary process as "safeguard[ing] the administration of justice, protect[ing] the public from the misconduct or unfitness of members of the legal profession, and preserv[ing] the confidence of the public in the integrity and trustworthiness of lawyers in general" (citing ABA Standards for Imposing Lawyer Sanctions 1.1)). We cannot sanction a reading of RPC 5.5(a) that hinders the public interest by allowing a suspended attorney "to act in matters of professional judgment" through another attorney or non-attorney. *Burson*, 909 S.W.2d at 775; *cf.* Tenn. Sup. Ct. R. 8, RPC 5.5(h) ("A lawyer or law firm shall not employ or continue the employment of a disbarred or suspended lawyer as an attorney, legal consultant, law clerk, paralegal or in any other position of a quasi-legal nature.").

Although not binding, the definition of "practice of law" in Tennessee Code Annotated section 23-3-101(3) supports our holding.[15] Section 23-3-103 makes it unlawful for a person to practice law without a license. Tenn. Code Ann. § 23-3-103(a)–(b) (2021). Section 23-3-101(3) defines "practice of law" as including, in part, "the soliciting of clients *directly or indirectly* to provide" legal services. *Id.* § -101(3) (emphasis added). Thus, it follows that a suspended attorney, whose license is not "in full force and effect," should not be able to solicit clients, either by direct contact or indirectly through the employment of others. *Id.* § -103(a).

We now review the record to determine if the hearing panel's finding that Mr. Waggoner violated RPC 5.5(a) is supported by substantial and material evidence. The record shows that during his suspension, Mr. Waggoner took an active role in interviewing and/or hiring at least eight attorneys to run Memphis Legal Group between his suspension date of August 1, 2017, and when he closed his office a year later. The attorneys include

---

[15] *See Burson*, 909 S.W.2d at 776 (providing that section 23-3-103 is "an aid to the inherent power of this Court" but that we "are not bound by the definitions . . . employed in these penalty statutes").

- 11 -

Brad Reasonover, Daniel Lenagar, Stephen Barnes, Kenneth Brashier, Joshua Corman, Joseph Crone, Chelsea Rainey, and Tim Fowler. Mr. Waggoner offered Mr. Reasonover the opportunity to "take over the firm." Mr. Lenagar and Mr. Barnes learned about the employment opportunity after hearing that "Mr. Waggoner was unable to practice and was looking for someone to take over his business while he was unable to practice." Mr. Waggoner met with Mr. Lenagar and Mr. Barnes and tried to hire them by saying, "It's your company. I'll market you too." In a later meeting with Mr. Brashier, Mr. Waggoner and Ms. Walker explained that Mr. Waggoner had been suspended and could no longer operate his long-standing practice. Mr. Brashier testified that in this meeting, Ms. Walker said she and Mr. Waggoner thought Mr. Brashier would be able to help Memphis Legal Group clients. Mr. Fowler eventually left the firm because of his suspicions, confirmed by Ms. Walker, that Memphis Legal Group was continuing to accept new clients, even though there was no supervising attorney.

Additionally, Mr. Waggoner had open communications with Memphis Legal Group's attorneys and assistants, both directly and indirectly using Ms. Walker as an intermediary, to maintain influence over Memphis Legal Group's operations. For example, Mr. Waggoner directed Memphis Legal Group's assistants to arrive at court early in an attempt to indirectly solicit clients for Memphis Legal Group contrary to the instructions given by Mr. Lenagar and Mr. Barnes. Mr. Waggoner periodically talked with Mr. Lenagar and Mr. Barnes during their employment at Memphis Legal Group, asking whether they were understanding the practice and if they had any questions. Both attorneys left Memphis Legal Group after learning that Mr. Waggoner or Ms. Walker had fired the assistants in the office. Mr. Brashier stated that Mr. Waggoner called to remind him that a specific prosecutor had previously offered to dismiss a pending criminal case. Andrea Menchaca, a former Memphis Legal Group assistant, testified that, when no attorney was available, she would call Ms. Walker with legal questions that clients had about their cases. Ms. Walker would return her call with an answer within twenty to thirty minutes. Mr. Fowler stated when he brought up an issue with Ms. Walker, he later received an unprompted message from Mr. Waggoner addressing that issue.

Mr. Waggoner also indirectly communicated with former clients after his suspension. He testified he used Memphis Legal Group attorneys and staff as intermediaries to avoid being accused of giving legal advice. Mr. Waggoner explained he was "trying to find a home" for his clients' files as late as August 2018. He admitted communicating with former clients about his suspension and its effect on the logistics of their cases, including whether Mr. Waggoner could refer them to another attorney and if another attorney would appear in court to represent them. He stated Ms. Walker would talk to clients before talking to Mr. Waggoner and resolving their issues.

Mr. Waggoner's active role at Memphis Legal Group was, at least in part, motivated by his concern about maintaining his client base and staying current on Memphis Legal Group's three-year lease, for which he was responsible. Mr. Waggoner admitted he was concerned about putting attorneys in place who could take care of his clients and generate enough income to make his lease payments and to pay other expenses. Mr. Waggoner conceded that he attempted to incentivize Memphis Legal Group's newly hired attorneys to assume a managing role by describing the prospect of Memphis Legal Group's current and prospective clients and the money that the attorneys could bring in. Mr. Waggoner lauded Mr. Lenagar and Mr. Barnes for working "inexpensively." After his suspension, Mr. Waggoner started a direct mail marketing firm that provided marketing services for Memphis Legal Group. During his tenure at Memphis Legal Group, Mr. Brashier realized that Memphis Legal Group's marketing letters, prepared by Mr. Waggoner, incorrectly attributed Mr. Waggoner's years of experience to him. When asked about the error, Mr. Waggoner responded by saying that Mr. Brashier was "running an office that ha[d] been around now for many, many years."

In sum, substantial and material evidence supports the hearing panel's findings that Mr. Waggoner continued to play an active role in the operation, management, and marketing of Memphis Legal Group to maintain his practice during his suspension and to generate revenue to fulfill his financial obligations for lease payments and other expenses. Mr. Waggoner tried to skirt his suspension by hiring contract lawyers through Memphis Legal Group to do work he was prohibited from doing and using these attorneys and staff as a firewall against unauthorized practice. Mr. Waggoner also continued to communicate with attorneys, staff, and former clients during his suspension.

## *Propriety of the Sanction*

We next determine the appropriate sanction for Mr. Waggoner's misconduct. He violated RPC 5.5(a) by engaging in the unauthorized practice of law while he was suspended by order of this Court. Mr. Waggoner did not appeal the hearing panel's findings that he also violated RPC 8.4(a)[16] and (d) and that, in his representation in the Stephens and Vaught cases, he violated RPCs 1.3, 1.4, 1.15, 1.16, and 8.4 by, among other things, failing to act with reasonable diligence and promptness; failing to keep his client reasonably informed; failing to keep his clients' funds separate from his funds; failing to take steps to protect his clients' interests after withdrawing from representation; violating the Rules of Professional Conduct; engaging in conduct involving dishonesty; and engaging in conduct that was prejudicial to the administration of justice.

---

[16] Under RPC 8.4(a), it is professional misconduct to "violate or attempt to violate the Rules of Professional Conduct." Tenn. Sup. Ct. R. 8, RPC 8.4(a).

The Board argues the trial court erred by reducing Mr. Waggoner's suspension from four years to one year. Yet, the Board proposed to the hearing panel that Mr. Waggoner be suspended for a period of between six months and three years. It should be noted that the hearing panel's recommended four-year suspension was based on violations of RPC 5.5 and 8.4(a) and (d), as well as a number of violations that the trial court reversed, including RPCs 3.4(c), 8.1(b), and 8.4(c). Conversely, Mr. Waggoner characterizes the hearing panel's sanction as being too severe. He contends the hearing panel and trial court incorrectly applied aggravating and mitigating factors, and thus he should receive only a public censure.

The ABA Standards provide guidance for determining the appropriate sanction. Tenn. Sup. Ct. R. 9, § 15.4(a). Here, Standards 4.12,[17] 4.42,[18] 7.2,[19] and 8.2[20] apply to Mr. Waggoner's violations. Under these Standards, the presumptive sanction for Mr. Waggoner's violations is a suspension. Standard 6.23,[21] which has a baseline sanction of a reprimand, does not apply. This Standard applies where a lawyer "negligently fails to comply with a court order," and here the evidence supports the hearing panel's finding that Mr. Waggoner's noncompliance was intentional. Thus, the ABA Standards establish a baseline sanction of suspension for Mr. Waggoner's conduct.

We agree with the trial court that no mitigating factors and five aggravating factors apply: prior disciplinary history, substantial experience in the practice of law, failure to acknowledge the wrongful nature of his conduct, multiple offenses, and dishonest or selfish motive.

---

[17] "Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." ABA Standards for Imposing Lawyer Sanctions 4.12.

[18] "Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." ABA Standards for Imposing Lawyer Sanctions 4.42.

[19] "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." ABA Standards for Imposing Lawyer Sanctions 7.2.

[20] "Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." ABA Standards for Imposing Lawyer Sanctions 8.2.

[21] "Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding." ABA Standards for Imposing Lawyer Sanctions 6.23.

Mr. Waggoner does not contest his prior disciplinary history. In 2017, this Court suspended him for three years for misappropriating client funds from his escrow account and making material misrepresentations to the Board. As a part of that suspension, Mr. Waggoner was required to reimburse his client $48,528.25 less any amount he had previously reimbursed. In 2005, Mr. Waggoner was issued a private reprimand for violating RPCs 1.5(c), 7.1(a), 7.3(c)(1) and 7.3(c)(6) by failing to use written contingent fee agreements, by using misleading advertisements, and by failing to include notification of advertisement on mail-out communications. He does not challenge the finding that he has substantial experience in the practice of law.[22]

Mr. Waggoner argues the other aggravating factors are not supported in the record. He contends he acknowledged the wrongfulness of his conduct, citing his payment of the minors' settlement funds to the court clerk in 2020. However, Mr. Waggoner paid these client funds out of his personal bank account six years after he received the funds and only after the Board began investigating the nonpayment. He blamed the nonpayment on attorneys and staff in his office for failing to properly do their jobs. Mr. Waggoner was attorney of record in these cases and approved the settlement orders. He was responsible for the proper handling of the funds. Further, Mr. Waggoner failed to acknowledge it was wrong to manage his law firm by using his office manager as a "firewall" to protect him from charges of unauthorized practice of law. Thus, the evidence supports applying the aggravating factor of failure to acknowledge the wrongfulness of his conduct.

Next, Mr. Waggoner argues he did not commit multiple offenses. However, this argument ignores the fact that he has been found to have violated RPCs 5.5(a) and 8.4(a) and (d) in the initial petition and RPCs 1.3, 1.4, 1.15, 1.16, and 8.4 in the second supplemental petition. Three of the RPC violations, 5.5(a) and 8.4(a) and (d), occurred while Mr. Waggoner was suspended due to previous misconduct.

Mr. Waggoner also asserts the record supports mitigating factors of absence of a dishonest or selfish motive, cooperative attitude toward the proceedings, and full and free disclosure to the Board. He contends he acted out of concern for his clients who were unrepresented after his suspension. While Mr. Waggoner may have had concerns for his clients, the evidence also suggests he was motivated to keep his law firm operating and profitable during his suspension to satisfy his lease and other obligations and to enable him to return to his practice after his suspension ended. Further, Mr. Waggoner had the use of the minors' settlement funds for six years before he paid the funds to the court clerk. Thus, the record supports the application of the aggravating factor that Mr. Waggoner acted out of a dishonest or selfish motive.

---

[22] Mr. Waggoner was admitted to practice in Tennessee in 1989.

Mr. Waggoner argues that his "cooperative attitude toward the proceedings" is a mitigating factor. However, merely attending and participating in the disciplinary proceedings does not qualify as a mitigating factor. Mr. Waggoner also contends that he offered free and full disclosure to the Board and hearing panel. Nothing in the record supports this argument.

Sanctions imposed in similar cases are helpful in our analysis. In *Green v. Board of Professional Responsibility*, this Court suspended an attorney for violating RPCs 5.5(a) and 8.4(d) by appearing in a Mississippi trial court without being admitted pro hac vice as required by Mississippi court rules and for violating RPCs 1.3 (diligence), 1.4 (communication), and 8.4(a) (misconduct) by failing to adequately inform two separate clients about details of their representation, including the status of their cases and the trial strategies he planned to employ. 567 S.W.3d at 703–09. The attorney had multiple RPC violations, substantial experience in the practice of law, and a significant disciplinary history. *Id.* at 716–17. This Court applied four aggravating factors and four mitigating factors and affirmed a six-month suspension, with thirty days served on active suspension, as well as several conditions, including payment of restitution and employment of a practice monitor. *Id.* at 711, 717.

In *Flowers v. Board of Professional Responsibility*, this Court found an attorney had violated RPCs 5.5(a) and 8.4(a) and (d), along with over twenty other disciplinary rules, by conducting phone conferences and filing various legal documents, including briefs, motions, and petitions, with immigration and appellate courts during his suspension. 314 S.W.3d at 887–88. After considering the number and severity of his violations and applying six aggravating factors, the Court upheld the hearing panel's one-year suspension. *Id.* at 902.

In *Maddux v. Board of Professional Responsibility*, an attorney violated RPCs 1.15(b) (safekeeping property and funds), 4.1 (truthfulness in statements to others), and 8.4(a) and (c) (misconduct) by failing to deposit checks received on behalf of his former client with the Chancery Court for Hamilton County during pending litigation over the payments, as well as by failing to notify the trial court or opposing counsel that he had given the checks to his former client. 409 S.W.3d 613, 616–18 (Tenn. 2013). The Court upheld the hearing panel's nine-month suspension, finding three aggravating factors and two mitigating factors applied to the attorney. *Id.* at 628.

In *Thompson v. Board of Professional Responsibility*, this Court held that an attorney violated several RPCs, including 1.1 (competence), 1.3 (diligence), and 8.4(c) and (d) (misconduct), by filing a voluntary nonsuit and neglecting to refile the case within the

applicable statute of limitations. 600 S.W.3d 317, 318–19 (Tenn. 2020). The Court upheld a one-year suspension, concluding that four aggravating factors and three mitigating factors applied. *Id.* at 321–22.

As previously stated, Mr. Waggoner received a three-year suspension in 2017 when he took a substantial sum of his client's money from his escrow account without the client's knowledge or consent. And in 2005, he received a private reprimand for multiple RPC violations pertaining to fee agreements and advertisement. Mr. Waggoner apparently has learned nothing from these earlier sanctions imposed on him for his misconduct. Mr. Waggoner's unwillingness to abide by the Rules "foster[s] disrespect for the administration of justice that ultimately does great harm to the public, the legal system, and the profession of law." *Sneed*, 301 S.W.3d at 618. Admission to the bar is a privilege, and "[i]t is the duty of every recipient of that privilege"—including suspended attorneys—"to act at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions" for that privilege. Tenn. Sup. Ct. R. 9, § 1. "Where this duty is not met, we must act to protect the public." *Hornbeck*, 545 S.W.3d at 396 (quoting *Bd. of Pro. Resp. v. Cowan*, 388 S.W.3d 264, 272 (Tenn. 2012)). The sanction imposed on Mr. Waggoner should be "commensurate with the larger purpose of attorney discipline, which includes preserving the public's confidence in the profession." *Green*, 567 S.W.3d at 717 (quoting *In re Cope*, 549 S.W.3d 71, 77 (Tenn. 2018)).

Based on our review, we hold that Mr. Waggoner shall be suspended from practicing law for two years, with eighteen months on active suspension, effective upon the entry of this Court's order. *See* Tenn. Sup. Ct. R. 9, § 28.1. We have considered Mr. Waggoner's violations of RPCs 1.3, 1.4, 1.15, 1.16, 8.4, 5.5(a), and 8.4(a) and (d), the ABA Standards, his failure to acknowledge the wrongful nature of his conduct, his prior disciplinary history, his multiple offenses, his substantial experience in the practice of law, his dishonest or selfish motive, and comparable cases. Mr. Waggoner shall make restitution to the minors in the Stephens case for accrued interest during the time he improperly held their funds. *See* Tenn. Sup. Ct. R. 9, § 12.7. He shall also obtain an additional twelve hours of continuing legal education relating to ethics or the handling of client property. During the six-month period of his probated suspension, Mr. Waggoner shall engage a practice monitor. Before reinstatement, Mr. Waggoner must be current on all continuing legal education requirements, pay all outstanding registration fees and professional privilege taxes, and pay all court costs and Board costs in this matter.

## CONCLUSION

We affirm the hearing panel's decision that Mr. Waggoner violated RPC 5.5(a) by engaging in the unauthorized practice of law. For his violations of RPCs 5.5(a), 8.4(a), and

8.4(d) in the initial petition and RPCs 1.3, 1.4, 1.15, 1.16, and 8.4 in the second supplemental petition, Mr. Waggoner is suspended from the practice of law for two years, with eighteen months served on active suspension. His suspension shall be effective upon the entry of this Court's order. Mr. Waggoner shall make restitution to the minors in the Stephens case for accrued interest, obtain additional continuing legal education hours as ordered, and engage a practice monitor during his probated suspension. The costs of this appeal are taxed to Gerald D. Waggoner, Jr., for which execution may issue, if necessary.

_____
SHARON G. LEE, JUSTICE